UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORENZO DEJUAN HARRIS,

        Plaintiff,

v.

NICHOLAS SINGERLING and
SHANE HOAG,

        Defendants.
_____/

Case No. 1:24-cv-626

Hon. Paul L. Maloney

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought pursuant to 42 U.S.C. § 1983 by plaintiff Lorenzo Dejuan Harris, a prisoner in the custody of the Michigan Department of Corrections (MDOC). Plaintiff has sued two defendants, Sgt. Nicholas Singerling and Sgt. Shane Hoag. *See* Compl. (ECF No. 1). This matter is now before the Court on defendants' motion for summary judgment on the basis of exhaustion (ECF No. 14).

**I.    The complaint**

Plaintiff's claims involve the use of a taser at the MDOC's Muskegon Correctional Facility (MCF). Plaintiff's complaint stated (in his words):

> 10.    On June 8, 2023 plaintiff along with about 5 other prisoners were engaged in a physical altercation in 4 unit. Defendants Singerling and Hoag and numerous other officers arrived. Defendant Singerling and/or Hoag both discharged there tasers shooting plaintiff in the right side of his face after he had stopped fighting and was not resisting. As plaintiff went to the ground from the taser defendants Singerling and Hoag kneed plaintiff in the stomach and head without provocation.
>
> 11.    On this same day in question plaintiff was taken to segregation and when plaintiff inquired to defendants Singerling and Hoag on why they shot him in the face they stated "be glad we didn't do more to fuck over your dumb ass."

1

> 12. On June 14, 2023 plaintiff sent a healthcare request seeking medical attention due to his right foot and left side feeling numb and losing feeling in plaintiffs toe. See connected healthcare request dated: 6/14/23.
>
> 13. On June 20, 2023 plaintiff sent a mental health kite seeking mental health treatment due to the excessive force. Plaintiff was not given treatment but instead told by mental health that "they will follow-up during seg rounds." See connected response dated: 6/20/23.
>
> 14. After being transferred to another facility on or after June 21, 2023 plaintiff submitted another healthcare request to St. Louis Medical personell complaining of numbness on the entire right side of his body including losing feeling in his right hand. See connected Healthcare Request dated: 6/22/23. See also connected response dated: 6/23/23.
>
> 15. On August 10, 2023 plaintiff sent another healthcare request complaining of numbness in his right foot after being tasered and eye complications from the taser. See connected Healthcare Request dated: 8/10/23; see also response dated: 8/11/23.
>
> 16. Plaintiff submits that all facts stated herein are being pled with particularity as required by Fed.R.Civ.P.26(a)(1).

Compl. at PageID.3-4.

> Plaintiff seeks relief in Count I for "Excessive Force/Deliberate Indifference":
>
> 18. By virtue of the foregoing, defendants did recklessly disregard the risk associated with tasing a prisoner in the face who was not resisting and thus utilizing excessive force in kneeing him in the stomach and head contrary to the Cruel and Unusual Punishment Clause of the Eighth Amendment of the United States Constitution.

*Id*. at PageID.4. Plaintiff seeks compensatory damages, punitive damages, and "emotional and mental distress damages" totaling $500,000.00. *Id*.

## II. Motion for summary judgment

### A. Standard of review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

2

Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d  at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.    Exhaustion requirement

The Prison Litigation Reform Act (PLRA) provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.  *See*

*Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007).

In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 1.    MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* MDOC Policy Directive ("PD") 03.02.130 (effective March 18, 2019). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ Q and S. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ S (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ W. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II

4

Grievance Coordinator. *Id.* at ¶ DD. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ HH.

## 2.   Discussion

The MDOC Prisoner Step III Grievance Report (ECF No. 15-3, PageID.78) tracks all the grievances that a prisoner has filed at Step III. *See* Defendants' Brief (ECF No. 15, PageID.57). Here, plaintiff's Step III Grievance Report does not list any grievances filed through Step III. PageID.78. In short, there is no evidence that plaintiff exhausted any grievances before filing this lawsuit.

In his response, plaintiff asks the Court to deny defendants' motion for summary judgment on the basis "that the grievance process was unavailable to Plaintiff because the officer did not file his grievance." Plaintiff's Response (ECF No. 18, PageID.83). The issue before the Court is whether plaintiff has presented sufficient evidence to create a genuine issue of material fact that the grievance process was unavailable to him.

In plaintiff's verified complaint[1] he stated:

> 6.    Plaintiff filed a grievance on this incident on 6-14-23 and sent two subsequent follow-up letters to the grievance coordinator inquiring about the status of the grievances since she hadn't processed then. See Connected Grievance dated: 6/14/23; Letters dated: 6/25/23; 7/10/23. An incarcerated person "must exhaust available remedies, but need not exhaust unavailable ones." [*Ross v. Blake*, 578 U.S. 632, 642 (2016)]

Compl. at PageID.2.

In *Ross*, the Supreme Court identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief."

---

[1] *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (stating that the allegations in a verified complaint " 'have the same force and effect as an affidavit' for purposes of responding to a motion for summary judgment").

5

First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross* at 643. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use," meaning that "no ordinary prisoner can discern or navigate it." *Id*. at 643-44. Third, exhaustion is not available "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 644.

Here, plaintiff appears to contend that someone at the MDOC thwarted the grievance process by not filing his grievance.  The gist of plaintiff's response is that an unnamed "officer did not file the grievance which he wrote on 6/14/2023, nor was there a response to two letters which he wrote in an efford [sic] to receive a reply."  Plaintiff's Response at PageID.87.  However, plaintiff does not address this issue in detail, *e.g.*, explaining how he "filed" the grievance or identifying any particular staff member involved with the grievance process.  Plaintiff filed a short affidavit which addressed the exhaustion issue as follows,

> 3. On 6/14/2023 I wrote a grievance on Sgts. Nicholas Singerling and Shane Hoag's for the tasers striking me in the mouth.  When there was no reply I wrote a letter on June 25, 2023 and July 10, 2023, in hope of receiving an answer to the grievance.

Plaintiff's Aff. (ECF No. 18-2, PageID.98).  Plaintiff's affidavit does not address this issue in detail, *e.g.*, he does not explain how he submitted or filed the grievance or identify the MDOC employee who thwarted his efforts to file the grievance.

Defendants point out irregularities in plaintiff's explanation and contend that plaintiff's affidavit and MDOC policies contradict his allegations regarding the attempt to exhaust a grievance.  While the affidavit states that plaintiff "wrote" his grievance on June 14, 2023, the

6

goldenrod copy of the grievance filed in the Court was dated on the previous day (June 13, 2023) and included the following language,

> Note: Grievant sent his grievance out to a legal writer to type up and received it back on 6/13/23 to file on: 6/14/23.

*See* Unidentified Grievance (ECF No. 1-1, PageID.8).  While plaintiff acknowledged that a third-party typed his grievance, plaintiff's affidavit did not address how he was able to engage a legal writer to perform this task.  PD 05.03.116 ("Prisoners' Access to the Courts") states that the legal writer program "does not operate as a 'typing service' for prisoners."  *See* PD 05.03.116 ¶V.  In addition, PD 03.02.130 does not refer to legal writers assisting prisoners with grievances.  Rather, staff members provide this assistance:

> Wardens and FOA Region Managers shall ensure prisoners and parolees are provided assistance in completing a grievance form, if s/he determines it is needed. In such cases, assistance shall be provided by a staff member who is not involved in the grievance.

PD 03.02.130 ¶N.  Finally, plaintiff filed a goldenrod copy of a grievance in this Court (*see* PageID.8).  While this copy is proof that a grievance form was prepared, it is not evidence that the prisoner filed or attempted to file that grievance.

Plaintiff also stated that he sent letters to the grievance coordinator (GC) at MCF on June 25, 2023 and July 10, 2023, advising the GC that he had not received a response or receipt for the grievance.  Plaintiff filed copies of these letters (marked "cc:file") with his complaint (*see* PageID.9-10).  Defendants point out that there is no evidence that plaintiff actually sent the letters, which he would have mailed to MCF from his new correctional facility.

> Harris was transferred from MCF to the St. Louis Correctional Facility on or around June 21, 2023 (ECF No. 1, PageID.6), which means that he would have had to mail his kites to the MCF GC. As Harris is indigent (ECF No. 2), he would have needed to request a postage loan under MDOC PD 05.03.118 (Ex. 2), which means he would have had to complete disbursement forms to track the loan and mailing.

7

> Harris has not produced anything of the sort, which undermines his claim that he had mailed the kites to the MCF GC.

Defendants' Reply (ECF No. 20, PageID.115). Defendants also point out that there was no reason for plaintiff to submit a kite on June 25, 2023, because the 15 days for responding to the grievance had not expired. *Id*. at PageID.116. *See Dennis v. Howard*, No. 22-cv-11118, 2024 WL 3329122 at *5 (April 15, 2024), *R&R adopted*, 2024 WL 2991193 (E.D. Mich. June 13, 2024) (finding that a grievant's premature request for Step II form that went unanswered "demonstrates not that the grievance procedures were 'unavailable' to her but that she was not following the Policy and was not allowing the MDOC to review the matter as directed by the Policy").

The record created by plaintiff does not establish specific facts which demonstrate that the grievance procedure was unavailable to him. Rather, plaintiff's claim is based on a goldenrod copy of a grievance which indicates that a third-party typed the grievance for plaintiff contrary to MDOC policy, and plaintiff's conclusory statements that he "filed" the grievance on June 14, 2023, and then wrote two letters inquiring about the status of the grievance on June 25, 2023 and July 10, 2023. Affidavits setting forth ultimate or conclusory facts and which are "entirely devoid of details" are insufficient to either support or defeat a motion for summary judgment. *Sigmon v. Appalachian Coal Properties, Inc.*, 400 Fed. Appx. 43, 49 (6th Cir. 2010). *See Stine v. State Farm Fire & Casualty Company*, 428 Fed. Appx. 549, 550 (6th Cir. 2011) (a "conclusory affidavit bypasses the specific-facts requirement of Federal Rule of Civil Procedure 56 necessary to forestalling summary judgment"). Accordingly, plaintiff has failed to create a genuine issue of fact that the grievance process was unavailable to him.

### III.     Recommendation

For these reasons, I respectfully recommend that defendants' motion for summary judgment (ECF No. 14) be **GRANTED** and that this action be **terminated**.

Dated:  July 21, 2025                                         /s/ Ray Kent
                                                              RAY KENT
                                                              United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).